UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Magistrate No.
03-M-1150-JGD

UNITED STATES OF AMERICA

v.

TREVOR TEAGUE

## MEMORANDUM AND ORDER ON
## GOVERNMENT'S MOTION FOR DETENTION

November 7, 2003

DEIN, M.J.

### I. GOVERNMENT'S MOTION FOR DETENTION

The defendant, Trevor Teague, is charged in a criminal complaint with conspiracy to distribute and to possess with intent to distribute more than 100 kilograms of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 846. An initial appearance was held on October 27, 2003, at which time the government moved for detention on the grounds that the defendant was a danger to the community and posed a serious risk of flight, in accordance with 18 U.S.C. §§ 3142(f)(1)(C) and (f)(2)(A). A probable cause and detention hearing was held on October 30, 2003, at which time the defendant was represented by counsel. At the defendant's request, the hearing was continued to November 6, 2003, at which time the defendant was again represented by counsel. For the reasons detailed herein, this court orders that the defendant be detained prior to trial.

## II. THE BAIL REFORM ACT

A. Under the provisions of 18 U.S.C. § 3142 ("The Bail Reform Act"), the judicial officer shall order that, pending trial, the defendant either be (1) released on his or her own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation or exclusion; or (4) detained. See 18 U.S.C. § 3142(a).

Under § 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds by clear and convincing evidence after a detention hearing "that no condition or combination of conditions (set forth under § 3142(b) or (c)) will reasonably assure the safety of any other person or the community . . . ," or if the judicial officer finds by a preponderance of the evidence after a detention hearing "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ." See United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).

B. The government is entitled to move for detention on grounds of danger to the community in a case that –

    (1) involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);

    (2) involves an offense punishable by death or life imprisonment;

(3)  involves an offense proscribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the punishment authorized is imprisonment for ten years[1] or more; or

(4)  involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court sua sponte may move for, or set, a detention hearing where there is a serious risk that the defendant will flee, or where there is a serious risk of obstruction of justice or threats to potential witnesses. See 18 U.S.C. § 3142(f).

C.  In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community, or whether pretrial detention is warranted, the judicial officer must take into account and weigh information concerning --

    (a)  the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    (b)  the weight of the evidence against the accused;

    (c)  the history and characteristics of the person, including --

---

[1] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense – not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. See United States v. Moss, 887 F.2d 33, 336-37 (1st Cir. 1989).

    (i) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (ii) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

  (d) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

See 18 U.S.C. § 3142(g).

  D. Additionally, in making the determination, the judicial officer must consider two rebuttable presumptions, to wit:

  First, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person or the community if the judicial officer finds (1) that the defendant has been convicted of a federal crime of violence within the meaning of § 3156(a)(4) [or a state crime of violence within the meaning of § 3156(a)(4) if the offense would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed], a federal offense for which the maximum sentence is life imprisonment or death, a federal offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act -- e.g., possession of cocaine, heroin, or more than 1000 pounds of marijuana, with intent to distribute, the Controlled Substances Import and Export Act, or any felony after the person has been convicted of two or more prior offenses as described immediately above, or two or more state or local offenses that would have been offenses described immediately

above if circumstances giving rise to federal jurisdiction had existed; (2) that prior offense was committed while the person was on release pending trial; and (3) not more than five years has elapsed since the date of conviction for that prior offense, or his or her release for that prior offense, whichever is later. See 18 U.S.C. § 3142(e).

Second, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act or an offense under the provisions of 18 U.S.C. § 924(c) – i.e., use of or carrying a firearm during the commission of a federal offense which is a felony. See 18 U.S.C. § 3142(e).

Insofar as the latter "presumption" is applicable in assessing "risk of flight," the burden remains with the government to establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ." In striking the proper balance, this court must bear in mind Congress' findings that major drug offenders, as a class, pose a special danger of flight. The burden then rests on the defendant to come forward with "some evidence" indicating that these general findings are not applicable to him for whatever reason advanced. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991). This "only imposes a burden of production on a defendant. The burden of persuasion remains with the government." United States v. Palmer-Contreras, 835 F.2d 15, 17-18 (1st Cir. 1987) (per curiam); see also United States v.

Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988). Even when a defendant produces "some evidence" in rebuttal, however, the presumption does not disappear. Rather, it retains some evidentiary weight, the amount of which will depend on how closely the defendant's case "resembles the congressional paradigm" and other relevant factors. Palmer-Contreras, 835 F.2d at 17-18; Dillon, 938 F.2d at 1416. See United States v. Jessup, 757 F.2d 378, 387 (1st Cir. 1985).

### III. DISCUSSION OF WHETHER DETENTION IS WARRANTED

"Detention determinations must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant." U.S. v. Tortora, 922 F.2d 880, 888 (1st Cir. 1990), and cases cited. Based on the record before me, I find that there are no conditions which may be imposed which will reasonably insure the safety of the community.

Following the conclusion of the evidence and argument of counsel, this court found that there is probable cause to establish that the crime alleged in the complaint was committed and that the defendant committed the crime charged. Since the defendant is charged with a violation of the Controlled Substances Act (21 U.S.C. § 801 et seq.) which carries a maximum sentence of ten years or more of imprisonment, the rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the defendant as required and the safety of the community applies. The defendant has proffered letters from friends and family members in response to the presumption. Assuming, arguendo, that such unsworn "evidence" meets the defendant's burden of production, even without the presumption, I find that the government

has proven by clear and convincing evidence that there are no conditions or combination of conditions which will reasonably assure the safety of other persons.

### A. The Offense Charged And Weight Of The Evidence

The defendant is charged with a serious drug offense, and faces a maximum term of imprisonment of 40 years with a mandatory minimum of 5 years if convicted of the crime charged. The case against him is strong. Briefly, on October 22, 2003 the police in Phelps County, Missouri, stopped a 40-foot recreational vehicle ("RV") for traffic violations. The vehicle was being driven by Christopher Sugar and carried a passenger, Sean Stark, both of whom are co-defendants in the instant case. The RV was registered to a Robert L. Ireland of Tucson, Arizona, the owner of Link Trailer Repair. Teague is employed by Link.

After a drug detection dog "alerted" to the existence of narcotics within the RV, the vehicle was searched and 27 bundles (holding 376 pounds) of marijuana wrapped in cellophane shrink-wrap were found in a locked closet. Sugar and Stark were arrested on Missouri state narcotics charges and agreed to cooperate with law enforcement and make a controlled delivery of the marijuana to its intended recipient in Massachusetts. They traveled to Massachusetts on October 23 and 24, 2003, accompanied by DEA Task Force Agents. Along the way, Stark made a number of calls to Teague's co-defendant, Fabian Ruiz, who Sugar and Stark identified as the owner of the marijuana. Ruiz lived in Tucson. According to Stark, he and Sugar were being paid approximately $20,000 to deliver the marijuana to Ruiz's customer, the defendant Anibal Torres, who Stark knew as "Pace." Further, according to Stark, he had made 5 or so similar deliveries of marijuana for Ruiz in the past.

On October 24, 2003, the RV arrived in Massachusetts. Stark, with the Agents' knowledge, arranged with Ruiz for the delivery of the marijuana. There was surveillance of the delivery. Basically, Ruiz arrived at the designated location in a white Lexus driven by Anibal Torres (a/k/a "Pace"). Teague was in the car as well. The RV had been disabled by the Agents, and attempts by Ruiz to start the RV were unsuccessful. Thereafter, Ruiz, Torres and Teague began unloading the marijuana into the Lexus. They were then arrested.

Torres told the agents that he picked up Ruiz and Teague the night before in Lowell, and that they spent the night at his house. Torres was supposed to make approximately $5,000 for his role in transporting the marijuana within Massachusetts. Torres told Agents that he had participated in approximately 6 other trips for Ruiz in the past.

Teague and Ruiz had traveled to Massachusetts together. While traveling from Tucson to Massachusetts, Ruiz and Teague stopped in Arkansas, where Ruiz pleaded guilty to a charge of possession with intent to deliver marijuana. He was sentenced to 15 years of imprisonment, with 9 years suspended, and was supposed to start serving his sentence on January 23, 2004. Teague was also charged as a co-defendant with Ruiz. However, he stopped in Arkansas to have the charges against him dismissed.

### B. History And Characteristics Of The Defendant

The defendant, age 26, was born on May 19, 1977 in Orlando, Florida. He graduated from high school in Arizona in 1994. He served in the United States Army from 1995 until 1997, when he received a General Discharge. The defendant stated that he was convicted of endangering a child in Texas and received 2 months incarceration and 5

years probation, as a result of which he was discharged from the Army. The charges stem from the beating of the defendant's 8 month old step-daughter, on June 20, 1996. See Exhibit 12. Then on September 5, 1996, the defendant was charged with abandoning a child and possession of prohibited weapons when the same child was left alone in a residence with loaded firearms. See Exhibit 13. It is unclear which of these incidents resulted in Teague's discharge from the Army.

The defendant grew up in Tucson, Arizona. The defendant has two children from an ongoing relationship with Kristy Holt. He has been employed by Link Trailer Repair, the business owned by the owner of the RV, for the last 10 months. It appears that the defendant may have obtained another job with a different RV repair business.

On February 18, 2003, the defendant and Ruiz were charged with possession of marijuana with intent to deliver and possession of drug paraphernalia in Crawford County, Arkansas. See Exhibit 11. As noted above, Ruiz pleaded guilty to the possession of marijuana with intent to deliver charge on October 22, 2003, on his way from Tucson to Massachusetts, and was sentenced to 15 years, with 9 years suspended, and was to start serving his sentence on January 23, 2004. Teague stopped by the court with Ruiz on October 22, 2003, on his way to Massachusetts, at which time the charges against Teague were dropped.

Teague has submitted a number of letters in support of his release from family members and friends.

### C. Danger To The Community

The government has met its burden of proof, by clear and convincing evidence, that there are no conditions or combination of conditions of release which will reasonably assure the safety of other persons and the community.  The evidence that the defendant was engaged in a significant drug venture is strong.  He was arrested with Ruiz in February 2003 on similar drug charges, and, therefore, was obviously aware of Ruiz's involvement in drug trafficking.  While the defendant contends that he was just in the wrong place at the wrong time, based on the evidence before the court at this juncture, it strains logic to believe that he was unaware of the contents of the RV.  While he may have been unaware of Ruiz' drug delivery in February 2003, it is incredible to believe that he had no inkling of a potential drug delivery when he traveled across the country with Ruiz just a few months later.  Moreover, Teague was involved in off-loading the drugs from the RV in Massachusetts.

Since Teague was charged with Ruiz in Arkansas, and stopped by the court with him to take care of the case there, he must have known of the sentence which had been imposed on Ruiz.  Nevertheless, he continued to travel with Ruiz to Massachusetts, and to help deliver the marijuana.  It seems that the fact that his colleague was about to begin a 15 year sentence for dealing drugs did not deter Teague from continuing in the drug business.  Under such circumstances, there do not appear to be conditions which would assure the safety of others and the community.

The defendant has proposed that he be released to his home and family in Arizona, and that his travel be restricted to that state.  In addition, the defendant proposed that he post a $5,000 bond, using a $4,000 equity loan on the trailer in which the defendant and

his girlfriend live, and $1,000 cash. However, given the large amount of drugs involved in this shipment, as well as the fact that he was caught with Ruiz delivering another shipment just months before, the amount of the bond does not seem to this court to be sufficient to insure the defendant's compliance with conditions imposed by the court. Moreover, the defendant's criminal behavior has continued despite his relationship with and the support of friends and family. The defendant's family does not appear to exert sufficient control over the defendant's behavior to insure that he complies with conditions of release.

In light of this finding, the court does not reach the issue whether detention is appropriate on the grounds that the defendant poses a serious risk of flight.

## IV. ORDER OF DETENTION

IT IS ACCORDINGLY ORDERED that the defendant remain DETAINED pending trial, and it is further Ordered --

(1) That the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) That the defendant be afforded a reasonable opportunity for private consultation with counsel; and

(3) On order of a court of the United States or on request by an attorney for the government, the person in charge of the corrections facility in which the defendant is detained and confined deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

                                            <u>/ s / Judith Gail Dein</u>
                                            Judith Gail Dein
                                            United States Magistrate Judge